GENERAL MOTORS CORPORATION v. EMPLOYMENT
SECURITY COMMISSION.

DECISION OF THE COURT.

1. UNEMPLOYMENT COMPENSATION—NATIONAL CONTRACT—EXTENSION
OF STRIKE FROM SUPPLIER PLANT TO SUPPLIED PLANT OF SAME
EMPLOYER.

Denial of unemployment compensation benefits to employees at
plant in this State which was shut down because of lack of
parts supplied by employer's struck plant in another State
which was subject to national union contract extending the
strike to plants forced to close by reason of such strike is
affirmed (CLS 1961, § 421.29).

SEPARATE OPINION.

DETHMERS and KELLY, JJ.

2. UNEMPLOYMENT COMPENSATION—WAIVER OF BENEFITS—NATIONAL
CONTRACT—SCOPE OF STRIKE.

*Provision of national union contract whereby an authorized strike
in 1 bargaining unit which results in an interruption in flow
of material or services to operations in any other bargaining
unit of the same employer would be considered an authorized
strike in the latter plant is not construed as a waiver of bene-
fits, contrary; to statute invalidating such waivers, where there
is no express waiver of benefits and fair construction requires
that an authorized strike in an out-of-State supplying plant*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6–9] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds §§ 34, 36.
Construction and application of provisions of unemployment com-
pensation or social security acts regarding disqualification for
benefits because of labor disputes or strikes.    28 ALR2d 287.
[3] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 36, 46, 49.
[5] 31 Am Jur, Labor §§ 369, 383.
[10] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 10, 11, 34.
[11] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 3, 5, 34.

constitutes a strike in the plant in this State, where claimants were employed, that had to close because of stoppage in the supplier (CL 1948, § 421.31).

3. SAME—LABOR DISPUTE—FINDINGS OF FACT—WEIGHT OF EVIDENCE.
Findings of fact by referee, adopted by the appeal board, that stoppage of work in 2 of the employer's plants located in this State was because of a labor dispute within the establishments in which claimants were employed and that agreement between employer and union which included a provision that an authorized strike in 1 plant resulting in interruption of flow of material or services to operations in any other bargaining unit would be considered an authorized strike in the latter held, not contrary to the great weight of the evidence, hence should not be disturbed (CLS 1961, § 421.38).

4. ADMINISTRATIVE LAW—COURTS.
The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.

5. LABOR RELATIONS—STRIKES.
An authorized strike is not a creature of the law, but, rather, of the call and action of the union.

6. UNEMPLOYMENT COMPENSATION—EXTENSION OF STRIKE FROM SUPPLIER PLANT TO SUPPLIED PLANT OF SAME EMPLOYER—WAIVERS—DISQUALIFICATION FOR BENEFITS.
Stoppage of work in employer's plants in this State where claimants were employed, by reason of an authorized strike in the employer's supplying plant in another State was an extension of such strike to the plants in this State by reason of national contract which provided for such an extension, hence, the union's action of calling a strike was not a violation of provision of the employment security act barring waivers of rights to benefits under the act, the layoff in this State being due to an extension of the strike, disqualifying claimants from benefits (CL 1948, § 421.31; CLS 1961, §§ 421.29, 421.33).

SEPARATE OPINION.
O'HARA, J.

7. UNEMPLOYMENT COMPENSATION—WAIVER OF BENEFITS—COLLUSIVE OR COERCED AGREEMENT.
The waiver of an unemployment compensation benefit pursuant to a collusive or coerced agreement between the employer and employee would be void (CLS 1961, § 421.31).

DISSENTING OPINION.

T. M. KAVANAGH, C. J., and BLACK, J.

8. UNEMPLOYMENT COMPENSATION—WAIVER.
   *Employees cannot waive their right to unemployment compensa-*
   *tion benefits (CL 1948, § 421.31).*

9. SAME—STATUTES—NATIONAL UNION CONTRACT—WAIVER.
   *Provision of national bargaining agreement between union and*
   *employer whereby an authorized strike in bargaining unit which*
   *results in an interruption of flow of material or services to*
   *operations in any other bargaining unit would be considered*
   *an authorized strike in any such affected bargaining unit did*
   *not effect a waiver of benefits to employees in Michigan plants*
   *of the employer who were idled by reason of strike in an em-*
   *ployer's Ohio plant (CL 1948, § 421.31).*

10. SAME—STATE—STATUTES.
    *The State alone may allow or deny unemployment compensation*
    *benefits, and may do so only in accordance with the State law*
    *establishing and governing the same, especially with respect to*
    *waiver (CL 1948, § 421.31).*

11. SAME—WAIVER—EXTENSION OF STRIKE.
    *The broadly purposed social security act of 1935, pursuant to*
    *which State had enacted unemployment compensation law*
    *barring waiver of unemployment compensation benefits is*
    *consistent with the national labor relations act permitting col-*
    *lective bargaining and the ordering of industrial relations to*
    *minimize industrial strife, and pursuant to which a national*
    *agreement between labor union and employer had been made*
    *extending authorized strike to other plants of the employer*
    *forced to close by reason of lack of material or services from*
    *struck plant (CL 1948, § 421.31).*

Appeal from Ingham; Anderson, Jr. (David), J., presiding. Submitted October 9, 1964. (Calendar No. 31, Docket No. 50,411.) Decided July 13, 1965. Rehearing granted October 4, 1965. See 378 Mich 110.

Robert H. Stinson and others filed claims for unemployment compensation against General Motors Corporation, a Delaware corporation, because of lay-offs necessitated by labor disputes and work stoppages in company's out-of-state operations.

Hearing referee and appeal board granted compensation. On certiorari, circuit court denied compensation. Defendant Stinson appeals. Affirmed.

*Aloysius F. Power (K. Douglas Mann* and *Richard E. Helms,* of counsel), for plaintiff General Motors Corporation.

*Zwerdling, Miller, Klimist & Maurer (A. L. Zwerdling* and *Nino E. Green,* of counsel, *Stephen I. Schlossberg,* of counsel on application for rehearing), for defendant Stinson and others.

*Frank J. Kelley,* Attorney General, *James R. Ramsey,* Acting Solicitor General, *George M. Bourgon* and *John J. Long,* Assistant Attorneys General, for the Michigan Employment Security Commission.

DETHMERS, J. This is an unemployment compensation case involving multiple claims, for weeks in September and October of 1957, of several employees, consolidated as permitted by CLS 1961, § 421.33 (Stat Ann 1960 Rev § 17.535). The appeal here is by claimants from a circuit court order holding them disqualified from receiving benefits under the act (CL 1948, § 421.1 *et seq.* [Stat Ann 1960 Rev § 17.501 *et seq.*] as amended) and reversing the contrary decision of the appeal board of the Michigan employment security commission.

Claimants were employees of plaintiff General Motors Corporation, in its Fisher No. 1 and its Buick plants in Flint, Michigan. In the manufacturing operations of those 2 plants parts were necessary which were made in its Fisher Body plant in Mansfield, Ohio. A strike was called at the Mansfield plant, authorized by the international union of which the employees in all 3 of the mentioned plants were members. This occasioned cessation of operations

in the Mansfield, Ohio, plant, which resulted in a lack in the 2 Flint plants of parts manufactured in Mansfield which were necessary to the Flint manufacturing process, and this, in turn, caused the shutting down of the Flint plants and consequent unemployment of claimants. These facts gave rise to the question whether, as held by the circuit court, claimants were disqualified for benefits under section 29(1)(b) of the act (CLS 1961, § 421.29 [Stat Ann 1960 Rev § 17.531]).

The facts in this case are substantially like those in *Park* v. *Employment Security Commission,* 355 Mich 103, and decision therein might be considered to govern decision here, except for the one distinguishing feature on the facts which afforded the basis of the circuit court's decision. That distinction is that here, as was not true in *Park,* the national contract in force between the union and the employer contained the following paragraph:

"The union has requested this national agreement in place of independent agreements for each bargaining unit covered thereby. Accordingly an authorized strike in one bargaining unit under this agreement which results in an interruption in the flow of material or services to operations in any other bargaining unit under this agreement, will be considered an authorized strike in any such affected bargaining unit."

In *Park* a majority of this Court decided that the employees in a Michigan plant, shut down for lack of parts regularly manufactured in and furnished to the Michigan plant by a struck Ohio plant, were not disqualified from receiving benefits under said section 29(1)(b) of the act, which provides for such disqualification in case of unemployment due to a stoppage of work existing because of a labor dispute in the *establishment* in which claimant is or was last

employed. This decision was based on a holding that the struck Ohio plant and the resultantly closed Michigan plant were not one or the same *establishment,* and, hence, the disqualification of that section did not apply. That would seem to cover the facts in the case at bar except for the mentioned provision of the union-management labor contract. Does it make the *Park* decision inapplicable?

Claimants here contend that the noted contract provision cannot be considered valid if given the interpretation and effect given it by the circuit court which, they say, applied the disqualifying provisions of said section 29(1)(b) to the situation as if the 3 plants in question were part of one establishment. We do not think that a holding that the 3 plants, 1 in Ohio and 2 in Michigan, are part of 1 establishment is essential to the circuit court's decision that claimants were disqualified. Rather, the decision is to be supported on the proposition that the meaning of the contract provision is that, under the facts here obtaining, the union had authorized and called a strike not only in Mansfield, but, as well, in the Flint plants. If that is the effect of said contract provision, is it valid under the statute? Claimants say not, because of the provisions of section 31 of the act (CL 1948, § 421.31 [Stat Ann 1960 Rev § 17.533]) which reads, in part, as follows:

"No agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this act from an employer shall be valid. No agreements by an individual in the employ of any person or concern to pay all or any portion of the contributions of an employer, required under this act from such employer, shall be valid. No employer shall directly or indirectly make or require or accept any deduction from the remuneration of any individual in his employ to finance the contributions of the employer required from him, or require or

accept any waiver of any right hereunder by any individual in his employ."

The question, then, boils down to this, whether the quoted provision of the contract is violative of section 31 of the act and, hence, invalid and inoperative. If so, claimants may receive compensation. If not, they are disqualified therefor.

The language of the contract does not express a waiver of benefits as prohibited in section 31 of the act. Fairly construed, it provides that when the union authorizes a strike in one of the employer's plants, causing an interruption of flow of materials to another one of its plants and of operations therein, with consequent layoff of union members who are employees in the latter, such layoff shall be considered as occasioned by an authorized strike in the latter, or, in short, that the union, under such circumstances, has authorized and extended the strike to the latter plant. It follows that, under section 29(1)(b) of the act, claimants stopped working in the Flint plants in the course of a labor dispute in the establishment, even as defined in *Park,* in which they were then employed.

The appeal board adopted as a part of its decision the findings of fact of the referee that (1) there was a stoppage of work because of a labor dispute within the establishments in which claimants were employed, and (2) that the union and the employer, in agreeing on the noted provision of the contract, did not enter into "a collusive agreement that unemployment benefits be waived". There were no proofs or showing contrary to those findings of fact. There was undisputed testimony that the labor dispute at the Ohio plant involved and included not only local issues there, but also demands for changes in the wages, hours or other conditions of employment of the employees of other plants of the employer, in-

cluding those of the 2 Flint plants (claimants herein) under the national agreement between the union and the employer. Those findings of fact are not, therefore, contrary to the great weight of the evidence. We may not, then, disturb them. See section 38 of the act (CLS 1961, § 421.38 [Stat Ann 1960 Rev § 17.540]); also, *Miller* v. *F. W. Woolworth Company,* 359 Mich 342, and cases therein cited.

To the extent that it might be reasoned that the findings are conclusions and applications of law, and I do not agree with such reasoning, applicable is the following from *Mississippi Valley Barge Line Co.* v. *United States,* 292 US 282 (54 S Ct 692, 78 L ed 1260), quoted with approval in *Peaden* v. *Employment Security Commission,* 355 Mich 613, 629:

" 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' "

On the record presented here there is a reasonable basis for the conclusion that there was a labor dispute in the establishments in which claimants were employed because the union, under the agreement, automatically called a strike in and extended the labor dispute thereto under the circumstances of this case, and, hence, the agreement was not a collusive agreement that unemployment benefits be waived. There were none to be waived because the strike existed, by agreement, in the plants in which they had been employed. After all, an authorized strike is not a creature of the law, but, rather, of the call and action of the union. Such action brings about the strike. It is no violation of section 31 of the statute for the union to call the strike, regardless of whether it is called independently of or in pursuance of the agreement which provided that the union was doing precisely that, under the circumstances of this case.

The order of the circuit court is affirmed.

KELLY, J., concurred with DETHMERS, J.

O'HARA, J. (*concurring*).   I concur with Mr. Justice DETHMERS and record again my disagreement with the principle that waiver of benefits is here involved.   The "waiver" contemplated by the statute, in my view, is a collusive or coerced result, not one arising from the reality of present-day arms' length collective bargaining between well-matched participants delineating the limits or extent of an "authorized strike."

BLACK, J. (*dissenting*).   The minority opinion of *Chrysler Corporation* v. *Smith,* 297 Mich 438, 135 ALR 900), later to become law (*Park* v. *Employment Security Commission,* 355 Mich 103), agreed with then Circuit Judge CARR (p 469) :[1]

"It is our conclusion from the foregoing that the several plants of appellant Chrysler Corporation must be held to be separate establishments within the meaning of our statute, and in this determination we concur with the conclusion of the referee, the appeal board, and Judge CARR, who affirmed their decisions."

The essence of Judge CARR's *Chrysler Case* opinion appears on page 118 of *Park's* report.   The conclusion finally reached by that eminent jurist was that "plaintiff's [Chrysler] different plants must be regarded as separate establishments insofar as the application of section 29, subd (d)[2] is concerned."[3]

---

[1] Judge CARR subsequently became an Associate and thereafter Chief Justice of this Court.  See 312 Mich iii and 372 Mich iii.

[2] CLS 1961, § 421.29(1)(d)  (Stat Ann 1960 Rev § 17.531).—RE-PORTER.

[3] 59 (pt 2) Oct Term, 1940, Michigan Supreme Court Records and Briefs, p 2400 (*Chrysler Corporation* v. *Smith,* 297 Mich 438 [135 ALR 900]).—REPORTER.

As in *Park* (140 and again at 151), I agree un-
reservedly with Judge CARR's view and application
of said section 29(d), and therefore look upon *Park*
as precedentially controlling of this appeal.

I gather from my Brother DETHMERS' opinion that
he would agree with such controlling application of
*Park* were it not for paragraph (118) of the national
contract[4] which had been agreed upon between the
plaintiff employer and the union representing GMC
employees.   Justice DETHMERS concludes, that pro-
vision considered, that it controls to exclusion of
*Park's* rule.   At this point our membership parts
melodious company.

If appellants Stinson *et al* were otherwise pos-
sessed of right to unemployment benefits as claimed,
and they were as all directly or tacitly concede, they
did not waive that right.   They could not.   The first
paragraph of section 31 of the statute, in effect when
the currently considered rights of appellants Stinson
*et al* accrued, read as follows (CL 1948, § 421.31
[Stat Ann 1960 Rev § 17.533]):

"Sec. 31. * * * No agreement by an individual
to waive, release, or commute his rights to benefits or
any other rights under this act from an employer
shall be valid.   No agreements by an individual in the
employ of any person or concern to pay all or any
portion of the contributions of an employer, required
under this act from such employer, shall be valid.
No employer shall directly or indirectly make or re-
quire or accept any deduction from the remuneration
of any individual in his employ to finance the contri-
butions of the employer required from him, or re-

---

[4] "(118) The union has requested this national agreement in place
of independent agreements for each bargaining unit covered thereby.
Accordingly an authorized strike in one bargaining unit under this
agreement which results in an interruption of the flow of material
or services to operations in any other bargaining unit under this
agreement, will be considered an authorized strike in any such affected
bargaining unit."

quire or accept any waiver of any right hereunder by any individual in his employ."

As against this statutory provision paragraph (118) cannot prevail in bar of benefits as claimed. See *General Motors Corporation* v. *Mulquin,* 134 Conn 118 (55 A2d 732), where the same contractual stipulation (designated in that case as section 131) was tendered by General Motors, as against a statutory provision corresponding fully with section 31 above, in support of an affirmative answer to the second question considered by the court. Such second question was (p 124):

"2. Did the commissioners err in holding that section 131 of the agreement of April 16, 1945, between General Motors Corporation and the International is void as contrary to and prohibited by section 1346 e (a) of the 1939 cumulative supplement?"[5]

The court concluded (p 133):

"As to the second [question], our answer is that if it was within the contemplation of the parties that section 131 of their agreement would prevent the award of unemployment benefits to the employees, the section is, to that extent at least, void and ineffective."

Since I find myself in agreement with the cited Connecticut case, it is due the circuit judge below to say that he reached judgment relying partly upon the majority opinion of *I. M. Dach Underwear Company* v. *Employment Security Commission,* 347 Mich 465, 479, 480.[6] *Dach,* however, never fully accepted

---

[5] For current Connecticut provisions see Connecticut General Statutes Annotated, § 31–272.—REPORTER.

[6] Judge Anderson said, in his opinion:

"It has been determined that an agreement, voluntarily entered into between employer and employee, covering a lawful subject of collective bargaining, is not an agreement to waive benefits even

here, has come to express overrulement. See *Michigan Employment Security Commission* v. *Vulcan Forging Co.*, 375 Mich 374.

The final question is stated appropriately by the attorney general:

"Does the supremacy clause of article 6 of the Federal Constitution validate a provision of a collective bargaining agreement which is illegal under a State unemployment compensation law?"

The attorney general, opposing plaintiff-appellee as regards such question, stands for a negative answer. He alleges a commonplace, that "the State alone may allow or deny unemployment compensation benefits, and may do so only in accordance with the State law establishing and governing the same", and proceeds to distinguish *Local 24 of I. B. of T. C., W. & H.* v. *Oliver*, 358 US 283 (79 S Ct 297, 3 L ed 2d 312) (the foremost authority cited by plaintiff-appellee to the point of overriding Federal supremacy[7]) on ground that the goal of Federal labor policy, as expressed in the National labor relations act[8] (see *Oliver* at 295, 296), is in no manner inconsistent with that uniform policy of the States which prohibits agreement "by an individual" to waive or commute payment of unemployment compensation in any instance where such compensation is otherwise lawfully payable to such individual.[9] With his reasoning I agree.

---

though the agreement may have a collateral effect on the employment status of the individual and result in disqualifying from benefits certain employees who otherwise would be entitled thereto. This court finds no rational basis for distinction between the present case and that of *I. M. Dach Underwear Company* v. *Employment Security Commission*, 347 Mich 465. The referee and the appeal board both found that the agreement was not void under section 31 of the act. Their finding was correct in fact and in law, and there is no basis for reversing such finding."

[7] US Const, Art 6, § 2.—Reporter.

[8] 49 Stat 449 (1935) and 61 Stat 136 (1947), 29 USCA, § 141 *et seq.*—Reporter.

[9] All 50 of the States, and Puerto Rico, have included in their

By the broadly purposed social security act of 1935,[10] Congress induced the States to enact their unemployment compensation laws. See footnote 2, *Unemployment Compensation Commission of Alaska v. Aragon,* 329 US 143, 145 (67 S Ct 245, 91 L ed 136). The policy of social security is as strong if not stronger than that of promotion—by congressional legislation—of collective bargaining and the ordering of industrial relations to minimize industrial strife. The two are consistent as well as socially beneficial. Both may be enforced, compatibly in today's context, by any State which, utilizing the specific likeness of said section 31, has prohibited agreements to waive unemployment benefits.

Since as applied here the Federal policies of social security, effected in part by State-enacted unemployment insurance, and of enforced collective bargaining to reduce industrial strife, are concordant rather than collusive, both stand without offense to the supremacy clause. The *Oliver Case,* as I read it, applies only when a State law, if given effect in a specific situation, "would wholly defeat the full realization of the congressional purpose." (*Oliver* at 295, 296). No such defeat of congressional purpose, by section 31's outlawing of the construction General Motors claims for paragraph (118), has been made to appear.[11]

---

respective unemployment compensation laws nonwaiver provisions which either duplicate section 31 or are set forth in the same specific essence. This information appears in the Unemployment Insurance Reporter, Vols. 1B through 10, published by Commerce Clearing House.

[10] 49 Stat 620 (1935), 42 USCA, § 301.—REPORTER.

[11] This view of the *Oliver Case* finds support in the Supreme Court's most recent reference thereto. See this concluding passage, written in the corresponding tenor of *United Mine Workers of America* v. *Pennington,* 381 US 657, at 665 (85 S Ct 1585, 1591; 14 L ed 2d 626, 633):

"But there are limits to what a union or an employer may offer or extract in the name of wages, and because they must bargain does not mean that the agreement reached may disregard other laws. *Teamsters Union* v. *Oliver,* 358 US 283, 296 (79 S Ct 297, 3 L ed 2d 347)."

No other question calls for discussion. The circuit court's judgment, entered upon certiorari to the appeal board, should be reversed with remand for entry of order upholding these claims as filed. Appellants should have costs of both courts.

T. M. Kavanagh, C. J., concurred with Black, J.

Souris, Smith, and Adams, JJ., did not sit.

---

*Brotherhood of Carpenters* v. *United States,* 330 US 395, 399, 400 (67 S Ct 775, 91 L ed 973)."