GENERAL MOTORS CORPORATION *v.* EMPLOYMENT SECURITY COMMISSION.

### DECISION OF THE COURT.

1. UNEMPLOYMENT COMPENSATION—NATIONAL CONTRACT—EXTENSION OF STRIKE FROM SUPPLIER PLANT TO SUPPLIED PLANT OF SAME EMPLOYER.

    Circuit court's denial of unemployment compensation benefits to employees at plant in this State which was shut down because of lack of parts supplied by employer's struck plant in another State which was subject to national union contract extending the strike to plants forced to close by reason of such strike is reversed and grant of claims by appeal board of employment security commission upheld (CLS 1961, § 421.29).

<hr />

### REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4–10] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 36.

Construction and application of provisions of unemployment compensation or social security acts regarding disqualification for benefits because of labor disputes or strikes. 28 ALR2d 287.

What constitutes labor dispute, strike, or lockout, within disqualifying provisions of unemployment compensation act. 91 L ed 146.

[3] 2 Am Jur 2d, Administrative Law § 747.

[11] 5 Am Jur 2d, Appeal and Error § 978 *et seq.*

30A Am Jur, Judges § 89 *et seq.*

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SOURIS and SMITH, JJ.

2. UNEMPLOYMENT COMPENSATION—WORK STOPPAGE IN ANOTHER STATE.

Circuit court's denial of unemployment compensation benefits to employees at plant in this State which was shut down because of lack of parts supplied by employer's struck plant in another State is reversed on rehearing (CLS 1961, § 421.29).

3. SAME—FINDING OF APPEAL BOARD—EVIDENCE.

The Supreme Court may not set aside findings of fact of the appeal board of the employment security commission unless such fact findings are contrary to the great weight of the evidence (CLS 1961, § 421.38).

4. SAME—FINDING OF APPEAL BOARD—EVIDENCE.

Evidence that a strike in an out-of-State plant was called or prolonged to effectuate a contract covering conditions of employment of apprentices located in numerous plants of the employer, but not in plant where claimants for unemployment compensation were employed, is not sufficient to support a finding that a labor dispute existed in such plant, just because some of the production workers there might more easily qualify for apprentice training or even because the employer unilaterally might extend the contract's provisions to its nonunion apprentices in such local plant, so as to disqualify claimants from unemployment compensation (CLS 1961, § 421.29).

5. SAME—WORDS AND PHRASES—LABOR DISPUTE.

The term labor dispute, as used in employment security act, means no more than a controversy between employer and employees regarding hours, wages, conditions of employment or recognition of a bargaining representative (CLS 1961, § 421-.29[1][b]).

6. SAME—FINDING OF APPEAL BOARD—SUPPORTED BY RECORD.

Findings of fact by the appeal board of the employment security commission that the issues resulting in the labor dispute were local matters concerning working conditions in an out-of-State plant, and wages, hours, and working conditions of claimants in this State were not involved in the labor dispute held, amply supported by the record (CLS 1961, § 421.29).

7. SAME—STATUTES—NATIONAL UNION CONTRACT—WAIVER.

Provision of national bargaining agreement between union and employer whereby an authorized strike in bargaining unit which

*results in an interruption of flow of material or services to operations in any other bargaining unit would be considered an authorized strike in any such affected bargaining unit did not effect a waiver of benefits to employees in Michigan plants of the employer who were idled by reason of strike in an employer's Ohio plant (CL 1948, § 421.31).*

DISSENTING OPINION.

DETHMERS, KELLY, and O'HARA, JJ.

8. UNEMPLOYMENT COMPENSATION—WAIVER OF BENEFITS—NATIONAL CONTRACT—SCOPE OF STRIKE.

*Provision of national union contract whereby an authorized strike in 1 bargaining unit which results in an interruption in flow of material or services to operations in any other bargaining unit of the same employer would be considered an authorized strike in the latter plant is not construed as a waiver of benefits, contrary to statute invalidating such waivers, where there is no express waiver of benefits and fair construction requires that an authorized strike in an out-of-State supplying plant constitutes a strike in the plant in this State, where claimants were employed, that had to close because of stoppage in the supplier (CL 1948, § 421.31).*

9. SAME—LABOR DISPUTE—FINDINGS OF FACT—WEIGHT OF EVIDENCE.

*Findings of fact by referee, adopted by the appeal board, that stoppage of work in 2 of the employer's plants located in this State was because of a labor dispute within the establishments in which claimants were employed and that agreement between employer and union which included a provision that an authorized strike in 1 plant resulting in interruption of flow of material or services to operations in any other bargaining unit would be considered an authorized strike in the latter* held, *not contrary to the great weight of the evidence, hence should not be disturbed (CLS 1961, § 421.38).*

10. SAME—EXTENSION OF STRIKE FROM SUPPLIER PLANT TO SUPPLIED PLANT OF SAME EMPLOYER—WAIVERS—DISQUALIFICATION FOR BENEFITS.

*Stoppage of work in employer's plants in this State where claimants were employed, by reason of an authorized strike in the employer's supplying plant in another State was an extension of such strike to the plants in this State by reason of national contract which provided for such an extension, hence, the union's action of calling a strike was not a violation of provision of the employment security act barring*

*waivers of rights to benefits under the act, the layoff in this State being due to an extension of the strike, disqualifying claimants from benefits (CL 1948, § 421.31; CLS 1961, §§ 421- .29, 421.33).*

11. JUDGES—REMOVAL OF DISQUALIFICATION—REHEARING.

*Amendment of court rule by the Supreme Court removing disqualification of justices of the Supreme Court from participation in the decision of a case should not permit disturbance on rehearing of result arrived at on original hearing (GCR 1963, 405.3[2]).*

Appeal from Ingham; Anderson, Jr. (David), J., presiding. Submitted October 9, 1964. Resubmitted December 8, 1965. (Calendar No. 20, Docket No. 50,411.) Decided June 8, 1966. Rehearing denied July 19, 1966. Appeal to Supreme Court of the United States dismissed December 12, 1966.

Robert H. Stinson and others filed claims for unemployment compensation against General Motors Corporation, a Delaware corporation, because of layoffs necessitated by labor disputes and work stoppages in company's out-of-state operations. Hearing referee and employment security appeal board granted compensation. On certiorari, circuit court denied compensation. Defendant Stinson appeals. Reversed, with remand for entry of order upholding grant of unemployment compensation benefits.

*Aloysius F. Power (K. Douglas Mann and Richard E. Helms,* of counsel), for plaintiff General Motors Corporation.

*Stephen I. Schlossberg* and *Zwerdling, Miller, Klimest & Maurer (A. L. Zwerdling,* of counsel), for defendant Stinson and others.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George M. Bourgon*

and *John J. Long,* Assistant Attorneys General, for the Employment Security Commission.

Souris, J. By a 3-2 decision, 3 Justices not participating, this Court affirmed the circuit judge's order reversing a decision of the employment security commission's appeal board which had granted unemployment compensation benefits to claimants, employees of the General Motors Corporation, 376 Mich 135. On its own motion the Court granted rehearing.[1]

The essential facts and principal questions presented by the appeal are stated fully and accurately in the opinions of Justices Dethmers and Black appearing at 376 Mich 135, 138, 143. It is my judgment that Justice Black was right in concluding that paragraph 118 of the collective bargaining agreement between General Motors and the claimants' union cannot be given the effect contended for it by General Motors without violation of section 31 of the employment security act (CL 1948, § 421.31 [Stat Ann 1960 Rev § 17.533]) and that, therefore, our decision in *Park* v. *Employment Security Commission* (1959), 355 Mich 103, requires reversal of the circuit court's judgment.

Since our grant of rehearing, General Motors has filed a supplemental brief in which it reargues a contention previously advanced but not considered in Justice Black's opinion. It is that claimants are disqualified from receiving unemployment compensation benefits not alone because of paragraph 118[2]

---

[1] In the interim between our earlier decision and the grant of rehearing, GCR 1963, 405.3(2) was amended, see 376 Mich xlix and 377 Mich xxi, thereby removing the bar which prevented two of the three nonparticipating Justices from participating in the first decision herein.

[2] Paragraph 118 reads as follows:

"The union has requested this national agreement in place of independent agreements for each bargaining unit covered hereby. Ac-

but, as well, because claimants' unemployment resulted in fact from a work stoppage due to a labor dispute in the establishments, even as defined in *Park, supra,* in which they were last employed. The basis for this contention by the company is evidence that the Mansfield, Ohio, strike involved more than just local issues affecting wages, hours and working conditions of the Mansfield employees; it is the company's claim that the price exacted from it for labor peace in Mansfield was its execution of a supplement to its 1955 national agreement with the union to include provisions therein "relating to apprentice training, the ratio of apprentices to journeymen, the allocation of overtime between journeymen and apprentices, and the eligibility of production employees for apprentice training".

The record discloses that following the 1955 national agreement, the union became the certified bargaining agent for apprentices at about 20 of the company's plants and that the supplementary agreement ultimately reached was designed to cover these apprentice employees. It also discloses that the apprentices at the Flint plants in which claimants worked were not represented by the union until over a year after termination of the Mansfield strike and execution of the supplementary agreement when the apprentices at the Fisher, but not the Buick, plant became members of the union. Nonetheless, the company argues that as a result of the supplementary agreement production employees at its Flint plants, including claimants, were accorded greater opportunities to become apprentices by a change made in the age limit for admitting employees into the apprentice training program. Furthermore, it

---

cordingly an authorized strike in one bargaining unit under this agreement which results in an interruption of the flow of material or services to operations in any other bargaining unit under this agreement, will be considered an authorized strike in any such affected bargaining unit."—REPORTER.

is claimed that journeymen at the Flint plants also benefited from certain of the provisions of the supplementary agreement. And finally, it is claimed that pursuant to a long-standing and well-recognized policy of General Motors the benefits granted by the supplemental agreement to apprentices represented by the union were extended to those apprentices not represented by the union, including those in the Flint plants in which claimants worked.

From all of this the company argues that the Mansfield strike, although it may have started as a local labor dispute, eventually became a national labor dispute permeating every "establishment" of the company; that claimants' unemployment was due "to a stoppage of work existing because of a labor dispute in the establishment in which [they are or were] last employed"; and that, therefore, claimants were disqualified to receive benefits by the provisions of section 29(1)(b)[3] of the act even without reliance upon the provisions of paragraph 118 of the collective bargaining agreement.

The trouble with this argument is that we are not free to set aside findings of facts made by the appeal board unless such findings are contrary to the great weight of the evidence. Section 38 of the act;[4] *Miller* v. *F. W. Woolworth Company* (1960), 359 Mich 342, 352. In this case of General Motors, the referee and the appeal board, by adoption of the referee's decision, found, contrary to the company's assertions, that:

"The issues resulting in the labor dispute at the Mansfield, Ohio, plant were local matters concerning working conditions involving the employees in such plant. It was not shown that the wages, hours or working conditions of the claimants herein were

---

[3] CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).
[4] CLS 1961, § 421.38 (Stat Ann 1960 Rev § 17.540).

involved in such labor dispute. It was brought out that certain matters concerning apprentices were involved in the dispute at the Ohio plant, and that agreement reached in this respect covered approximately 20 different units of the employer, none of which, however, concerned apprentices at the Fisher Body and Buick Motor Division plants in Flint."

The record amply supports the findings quoted. Indeed, had the appeal board found, as a matter of fact, that a labor dispute existed in the Flint plants in which claimants were employed solely on the basis of the evidence submitted by the company and summarized above, we would have had to hold that such finding was contrary to the great weight of the evidence. Evidence that a strike in Ohio was called or prolonged to effectuate a contract covering conditions of employment of apprentices located in numerous plants of the employer, but not in its Flint plants, is not sufficient to support a finding that a labor dispute existed in the Flint plants just because some of the Flint production employees might thereby more easily qualify for apprentice training or even because the employer unilaterally might extend the contract's provisions to its non-union apprentices in Flint. The term "labor dispute", as used in section 29(1)(b), cannot be read so broadly. It means no more than a controversy between employer and employees regarding hours, wages, conditions of employment or recognition of a bargaining representative. See *Lillard* v. *Employment Security Commission* (1961), 364 Mich 401, 420.

Absent evidence compelling a finding that claimants' unemployment was due to a stoppage of work because of a labor dispute in the establishments in which they were last employed, subsections (1), (2), (3), and (4) of section 29(1)(b) are not pertinent to

our decision. See *Park* v. *Employment Security Commission* (1959), 355 Mich 103, 131, 132.

The foregoing considered, I join now in Justice Black's opinion for reversal appearing at 376 Mich 135, 143, not alone for the reasons therein stated but, as well, for the further reason considered herein.

T. M. Kavanagh, C. J., and Smith, J., concurred with Souris, J.

Black, J., concurred in the result.

Dethmers, J. (*dissenting*). The circuit court's order in this case holding claimants disqualified from receiving the unemployment compensation benefits sought by them, was affirmed on this case's previous visit to this Court. Reasons for affirmance appear in the opinion of this writer as reported in 376 Mich 135.

Since then, nothing has happened to change the result except this Court's amendment, on October 4, 1965, of GCR 405.3(2) relating to disqualification of a judge for ownership of stock in a corporation party to a case, "thereby", as noted in a footnote in Mr. Justice Souris' opinion, "removing the bar which prevented two of the three nonparticipating Justices from participating in the first decision herein" and the immediate granting thereafter, on that same date, of this rehearing by action of what had thus become a majority vote of this Court. Accordingly, for the reasons stated in this writer's said opinion, affirmance again should be ordered on this rehearing.

Kelly and O'Hara, JJ., concurred with Dethmers, J.

Adams, J., did not sit.