LAYA v CEBAR CONSTRUCTION COMPANY

Docket No. 45878. Submitted June 5, 1980, at Detroit.—Decided October 23, 1980.

David Laya, following a layoff, took a job with Cebar Construction Company, 272 miles from his home. After 25 days, he quit his new job and applied for unemployment compensation. The Michigan Employment Security Commission (MESC) initially determined that he was disqualified from receiving benefits since he voluntarily left work without good cause attributable to his employer. The decision was affirmed on redetermination by the MESC, by a hearing referee, by the MESC board of review, and by Macomb Circuit Court, Edward J. Gallagher, J. Claimant appeals. *Held:*

As a matter of law, claimant did not voluntarily leave his new job, as the job was unsuitable by reason of the distance necessarily traveled to reach it. Thus, he is entitled to unemployment benefits.

Reversed and remanded for determination of amount of benefits.

T. C. Quinn, J., dissented. He would hold that claimant's termination of employment was voluntary. He would affirm.

Opinion of the Court

1. Unemployment Compensation — Appeal — Questions of Law.

Questions presented are questions of law on appeal of a determination of a Michigan Employment Security Commission board

References for Points in Headnotes

[1] 76 Am Jur 2d, Unemployment Compensation § 94.

[2-4] 76 Am Jur 2d, Unemployment Compensation § 59.
   Eligibility for unemployment compensation of employee who retires voluntarily. 88 ALR3d 274.

[5] 76 Am Jur 2d, Unemployment Compensation § 6.

[6, 8, 9] 76 Am Jur 2d, Unemployment Compensation § 69.
   Refusal of type of work other than that in which employee was formerly engaged as affecting right to unemployment compensation. 97 ALR2d 1125.

[7] 76 Am Jur 2d, Unemployment Compensation §§ 68, 70.

of review of a claim for unemployment benefits where there is no dispute as to the underlying facts.

2. UNEMPLOYMENT COMPENSATION — VOLUNTARY TERMINATION OF EMPLOYMENT — STATUTES.

A person who leaves work voluntarily, without good cause attributable to his employer or employing unit, shall be disqualified for benefits under the Employment Security Act (MCL 421.29[1][a]; MSA 17.531[1][a]).

3. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — VOLUNTARY TERMINATION OF EMPLOYMENT — WORDS AND PHRASES — STATUTES.

The word voluntary, as used in determining the disqualification of a person for unemployment benefits under the Employment Security Act, must connote a decision by such person based upon a choice between alternatives which ordinary men would find reasonable, not mere acquiescence to a result imposed by physical and economic facts utterly beyond his control (MCL 421.29[1][a]; MSA 17.531[1][a]).

4. UNEMPLOYMENT COMPENSATION — VOLUNTARY TERMINATION OF EMPLOYMENT — STATUTES.

An act of leaving a job is not necessarily voluntary under the Employment Security Act even though the act is traceable to a person's own choice (MCL 421.29[1][a]; MSA 17.531[1][a]).

5. UNEMPLOYMENT COMPENSATION — STATUTES — REMEDIAL STATUTES — DISQUALIFICATION PROVISIONS.

The provisions of the Employment Security Act should be construed liberally to give effect to the remedial policy of the act, and for the same reason, provisions for disqualification of a person for unemployment benefits should be narrowly construed (MCL 421.1 et seq.; MSA 17.501 et seq.).

6. UNEMPLOYMENT COMPENSATION — NEW JOB TRIAL PERIODS — DISQUALIFICATION FOR BENEFITS.

A claimant of unemployment benefits has a right to a trial period on a new job without being subjected to a disqualification for such benefits if he should decide that the job is not suitable for him.

7. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — SUITABILITY OF JOBS — DISTANCE TO JOB — STATUTES.

The suitability of a job for a particular person should not be determined solely by the nature of the work itself, but should

include, *inter alia,* a consideration of the distance which must be traveled to reach the job (MCL 421.29[6]; MSA 17.531[6]).

Dissent by T. C. Quinn, J.

8. Unemployment Compensation — Voluntary Termination of Employment — New Jobs.

   *The voluntary termination of employment by a person upon discovery by him that a new job was more than he bargained for disqualifies him from receiving unemployment benefits, even though he would have been qualified to receive such benefits had he not undertaken the new job.*

9. Unemployment Compensation — New Job Trial Periods — Courts — Administrative Bodies — Statutes.

   *The Employment Security Act does not provide for a trial period for a person on a new job, nor should a court or the Michigan Employment Security Commission create such a period in order to enable a person to avoid disqualification for unemployment benefits (MCL 421.1 et seq.; MSA 17.501 et seq.).*

*Frederick B. Gold,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Shirley L. Palardy,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

Before: R. M. Maher, P.J., and Bronson and T. C. Quinn,* JJ.

Bronson, J. Plaintiff appeals by right the judgment of the circuit court affirming the determination of various administrative authorities of the Michigan Employment Security Commission (MESC) that plaintiff was disqualified from receiving unemployment benefits under MCL 421.29(1)(a); MSA 17.531(1)(a).

The underlying facts are undisputed. Plaintiff,

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

David Laya, a plumber by trade, was living in Warren, Michigan, with his wife and two children when he was laid off in the spring of 1976. He reported to his local union in search of work, but, due to the poor economic conditions then existing, he was told no work was available in the community. He was told, however, that work was available through the union local in Cincinnati, Ohio. Despite the fact that he would have been eligible for unemployment benefits, plaintiff decided to make the trip to Ohio where he took a job with the Cebar Construction Company. Due to the 272-mile distance between his home in Warren and his employment in Ohio, plaintiff was forced to live in Ohio and travel home only on weekends. It soon became apparent that the great distance between home and work was difficult to drive, even on weekends, and was contributing to problems with plaintiff's family life. After 25 days of work, plaintiff quit his job in Ohio and returned home to Warren on April 16, 1976.

Plaintiff applied for unemployment benefits on April 23, 1976, but on May 21, 1976, the MESC issued a determination that he was disqualified from receiving benefits under MCL 421.29(1)(a); MSA 17.531(1)(a) because he voluntarily left work in Ohio without good cause attributable to his employer. This decision was affirmed on redetermination by the MESC on June 4, 1976, by a hearing referee on February 9, 1977, by the MESC board of review (one member dissenting) on August 10, 1978, and by the circuit court on April 30, 1979. Because there is no dispute as to the underlying facts, the questions presented are questions of law. *Baker v General Motors Corp,* 74 Mich App 237, 244-245, fn 2; 254 NW2d 45 (1977), *rev'd on other grounds* 409 Mich 639 (1980).

The statutory section under which plaintiff was disqualified provides:

"An individual shall be disqualified for benefits in all cases in which he:

"(a) Has left work voluntarily without good cause attributable to the employer or employing unit." MCL 421.29(1)(a); MSA 17.531(1)(a).

Plaintiff claims that, under the circumstances of this case, he did not quit "voluntarily" so that he is not disqualified under the statute. We have found no controlling Michigan authority directly on point, but the Supreme Court's split decision in *Lyons v Employment Security Comm,* 363 Mich 201; 108 NW2d 849 (1961), is so factually similar that it warrants detailed consideration.

In *Lyons,* plaintiff was an auto worker with a home and family in Trenton when he was laid off. After learning that work was available in Indianapolis, plaintiff sought and found employment at an auto plant there. He lived and worked in Indiana during the week and made the 273-mile journey to his family on weekends. After about two and one-half weeks on the job, it became apparent to him that things were not working out. Transportation difficulties developed, the job was not turning out as he had expected, and problems were developing at home. After about two and one-half weeks of attempting to make this plan work, he quit and returned to Trenton.

His request for unemployment benefits was denied on the basis that he had voluntarily left his Indiana employment without good cause attributable to his employer, and the case eventually reached the Supreme Court. Although the denial of benefits was upheld, the justices split over the

grounds of the decision. Three justices, led by Justice CARR, held that benefits were properly denied because the case presented a situation where, as a matter of law, the plaintiff clearly had left his job voluntarily and without good cause attributable to his employer. These justices expressed the opinion that, while plaintiff may have felt his quitting was justifiable, it was nevertheless based on wholly personal considerations which did not render the quit involuntary. *Id.,* 217-227. Two other justices agreed with this result, but refused to view the case as properly presenting a question of law as to whether the plaintiff quit his job voluntarily. They viewed the issue of voluntariness as one of fact which had been decided against the plaintiff by the Employment Security Commission. Since they found record evidence to support such a finding, they held that judicial review was foreclosed. *Id.,* 228-231.

The remaining three justices, in an opinion by Justice EDWARDS, *id.,* 202-217, agreed with Justice CARR's opinion in treating the issue of voluntariness as a question of law. After examining the facts and the purpose of the Employment Security Act, however, they reached an opposite conclusion and expressed the view that plaintiff had not voluntarily left his employment. These justices noted the lack of a philosophical consensus on the question of whether any human act may be said to be truly voluntary, but, for purposes of the Employment Security Act, they advocated a realistic standard which recognized that the physical distance between home and work, as well as the economic problems in trying to maintain two homes, could render a decision to quit as involuntary as it would be if compelled instead by law, the elements, or a serious illness.

"We hold that the word 'voluntary' as used in section 29(1)(a)(1) must connote a decision based upon a choice between alternatives which ordinary men would find reasonable—not mere acquiescence to a result imposed by physical and economic facts utterly beyond the individual's control." *Id.,* 216.

Because there was no majority as to the grounds of decision in *Lyons,* none of the three opinions is controlling. *Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976), *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973). In the face of this precedential void, we adopt the reasoning of Justice EDWARDS as the most persuasive. Because the factual situation in *Lyons* and in the instant case are practically indistinguishable, we adopt his result as well and hold that, as a matter of law, plaintiff did not leave his job "voluntarily". Plaintiff was not faced with a choice between alternatives that ordinary persons would consider reasonable. He could choose to remain in Ohio, hundreds of miles from home, attempting to return on weekends and watching his family deteriorate, or he could quit. Such a choice is the same as no choice at all.

There are many other factors which bolster our conclusion in this regard, and we will devote the remainder of this opinion to their discussion. First, case law has held that even though an employee leaves a job through some act directly traceable to his or her own choice, the leaving is not necessarily "voluntary" under the Employment Security Act. For example, in *Larson v Employment Security Comm,* 2 Mich App 540; 140 NW2d 777 (1966), the plaintiff was injured on the job and received both unemployment compensation and worker's compensation benefits due to the fact that he could no longer perform his job. The employer presented

him with a document whereby he resigned his employment in return for a lump-sum settlement of his worker's compensation claim. He testified that he signed the document due to economic pressures, but apparently without regard for its effect on his unemployment compensation. His unemployment benefits were terminated on the basis that he had voluntarily left his employment, but this Court held that the facts of the case did not establish a truly voluntary resignation:

"We do not deny that the claimant undoubtedly knew what he was doing when he signed this instrument, but it is another thing to say that he had a tenable alternative. Signing a settlement agreement under the circumstances in which Paul A. Larson found himself does not equate with leaving work voluntarily.

* * *

"Under the facts presented to us, voluntariness under these circumstances comes down to one thing. He may have 'voluntarily' *signed* the settlement statement, which included the termination of employment, but it does not necessarily follow that he left work 'voluntarily.' " *Id.,* 545, 546.

See also, *Thomas v Employment Security Comm,* 356 Mich 665; 97 NW2d 784 (1959) (claimant did not leave work voluntarily where discharged after being incarcerated on way to work because of traffic violation), *Copper Range Co v Unemployment Compensation Comm,* 320 Mich 460; 31 NW2d 692 (1948) (claimants did not leave work voluntarily when they voted to reject wage reduction which employer had made condition of keeping plant open). Accordingly, the fact that the plaintiff in the instant case quit his job in Ohio does not automatically mean that he quit it *voluntarily.*

Additional support for our conclusion is found in

the purpose and structure of the Employment Security Act. It is undisputed that, if plaintiff had simply sat at home and watched television while waiting for work in his own community, he would have collected benefits. It also appears that, if he had been offered the Ohio job and refused it, his benefits would not have beeen jeopardized as the distance between work and home is a factor in determining whether offered work is "suitable". MCL 421.29(6); MSA 17.531(6), *Bingham v American Screw Products Co,* 398 Mich 546, 563-564; 248 NW2d 537 (1976). The declaration of policy found in the employment security act provides:

"Declaration of policy. The legislature acting in the exercise of the police power of the state declares that the public policy of the state is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own,* thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state." MCL 421.2; MSA 17.502. (Emphasis added.)

It bears repeating that the courts should construe the provisions of the act liberally in order to give effect to this remedial policy. *General Motors Corp*

*v Employment Security Comm,* 378 Mich 110, 117; 142 NW2d 686 (1966), *Linski v Employment Security Comm,* 358 Mich 239, 245; 99 NW2d 582 (1959). For this same reason, the disqualification provisions of the act should be narrowly construed. *Chrysler Corp v DeVine,* 92 Mich App 555, 558; 285 NW2d 373 (1979). It would be a sad commentary on our values and would be wholly inconsistent with the purposes of the act for our law to be interpreted in such a manner as to discourage the initiative displayed by the plaintiff in the instant case. Rather than remaining content with unemployment benefits, plaintiff chose to travel hundreds of miles to look for work—work he did not need to take in order to receive benefits. After this option proved unworkable, plaintiff abandoned his experiment and returned home. This is not a worker who is unemployed through his own fault. The fault is more directly assignable to the distance involved, and if there was any fault on the part of plaintiff, it lay only in his optimism.

"Because our hardy optimist took a chance (along with a job) and soon found he 'couldn't make it,' he would be held to be a quitter of the 'voluntary' variety. As to him (and his wife and children), his decision in the Indianapolis employment office is to be made one of the sudden death variety." *Lyons, supra,* 203 (EDWARDS, J., dissenting).

We could not remain faithful to the policy of the Employment Security Act were we to hold that this plaintiff, who attempted a job he was not required to accept and found it unsuitable within a month, was disqualified because he quit "voluntarily".

This position has been accepted by other jurisdictions as well. In *Herman v Florida Dep't of*

*Commerce,* 323 So 2d 608 (Fla App, 1975), the claimant had been employed in a Miami Beach dress shop for 18 years when she left under circumstances not challenged as disqualifying on appeal. She then obtained employment in a pharmacy, but soon found the work there beyond her physical capabilities. In reversing an order denying her benefits because she had voluntarily left her job at the pharmacy, the Florida Court of Appeals stated:

"There is no contention in the brief filed upon the review that Ms. Herman would not be entitled to benefits if she had not taken the second job. It is our view that the Commission in approving the Appeals Referee's decision has departed from the purpose of the Unemployment Compensation Law, which is 'remedial, humanitarian legislation * * * [that] should be liberally and broadly construed.' * * * A claimant ought not be penalized for seeking to be employed even if, in her desire to be employed, she takes an unsuitable job and after a few days cannot continue the employment." *Id.,* 609. (Footnote omitted.)

In *Wallace v Dep't of Employment Security,* 134 Vt 513; 365 A2d 517 (1976), the Supreme Court of Vermont was faced with the question of whether an unemployed teacher, who took a legally "unsuitable" job as a clerk/typist and then quit after ten days, was disqualified because she had voluntarily left her job without good cause attributable to her employer. Similar to the instant case, she could have refused the clerical job without adversely affecting her eligibility for benefits. The Court held she was entitled to benefits and responded to the Employment Security Board's arguments as follows:

"The Employment Security Board maintains that the

claimant, by accepting unsuitable employment at a time when she was eligible for benefits, forfeited or waived those benefits. To subscribe to such a draconian interpretation of the relevant provisions of the Unemployment Compensation Act would be to defeat the remedial nature of that legislation." *Id.,* 514.

In *Wojcik v Division of Employment Security,* 58 NJ 341; 277 A2d 529 (1971), the claimant had been employed as a chemical engineer when he was discharged and found eligible to receive unemployment compensation. After failing to find work in his own profession, the claimant accepted a job involving general factory labor. The job was, for several reasons, not legally "suitable", so that he could have refused to accept such employment while continuing to receive benefits. After five weeks on the new job, he found he was unable to continue and quit. In determining that the claimant was not disqualified from receiving benefits, a unanimous Supreme Court of New Jersey stated:

"The question is whether a person who takes work he is not required to take should suffer the loss of unemployment benefits when he is unable to cope with that work. We do not believe he should. A contrary result would inhibit persons who are temporarily unemployed from taking work which, although not commensurate with their former employment, is nevertheless gainful activity which serves the general public interest. *Cf. Campbell's Soup Co v Div of Employment Security, supra,* 13 NJ at 436 [100 A2d 287]. We do not believe a person should be penalized for so laudable an effort. The philosophy of the Unemployment Compensation Law, NJSA 43:21-1 *et seq.,* is to encourage persons to work and, although the Law wisely recognizes that persons should not be compelled to accept employment which is unsuitable, it is contrary to the spirit of the Law to penalize persons who take such work. It is well known that today many highly trained persons are

unable to find work in their own fields because of economic factors beyond their control. If they are to work at all, many must experiment in new areas which are not 'suitable' under the statute. They should be given a reasonable time to measure their ability to cope with their new work, and to reapply for benefits if they cannot." *Id.*, 345-346.

We also note that, although not previously discussed in any appellate decision in this state, the MESC, as a matter of policy, allows an unemployed worker a similar "trial period" in which to determine if certain available work is suitable. In the decision of the MESC Board of Review in the matter of Randy W. Weller, claimant, and Nordco Drum, Inc., employer (appeal docket No. B76-15964-54555, dated July 18, 1978), the board stated: "It is well established that a claimant has a right to a trial period on a new job without being subjected to a disqualification if he should decide that it is not suitable work for him." In the instant case, the MESC concedes the existence of this policy, but argues that it is inapplicable to the facts before us. The MESC contends that the work itself must be unsuitable, such as in a case where a different degree of skill or knowledge is required that the claimant does not possess. This argument is without merit. The concept of "suitability" is not limited to the nature of the work itself and includes consideration of the distance which must be traveled to reach the job. MCL 421.29(6); MSA 17.531(6), *Bingham, supra.* The MESC also contends that, in any event, 25 days is too long a time to be considered a "trial period". For reasons not readily apparent, the issue of whether plaintiff's work in Ohio constituted a "trial period" was not decided at any of the various levels of decision making within the MESC. There is no factual finding as to whether 25 days was indeed too long

to be considered a "trial period". The only place that the concept was mentioned was in the opinion of the dissenting member of the Board of Review. Although our decision in the instant case is predicated on our holding that plaintiff did not quit voluntarily within the meaning of the statute, we do not believe that 25 days is an unreasonable period of time to constitute a trial period on the facts of the instant case. Larger periods of time have been accepted as "trial periods" when the facts were such that it could be expected that the unsuitable nature of the work would have become apparent at a sooner time. See *Wojcik, supra.*

The judgment of the circuit court is reversed, and the case remanded to the MESC for a determination of the amount of benefits due plaintiff.

Reversed.

R. M. MAHER, P.J., concurred.

T. C. QUINN, J. *(dissenting)*. I cannot accept the reasoning of the majority. On this record, plaintiff quit his work in Ohio voluntarily and was properly disqualified from unemployment compensation benefits. When he was laid off in Michigan in the spring of 1976, he had a choice of two reasonable alternatives—accept unemployment compensation benefits or seek work elsewhere. I commend his choice to seek work elsewhere, but it was a voluntary act. When this choice proved to be more than the plaintiff bargained for, does it thereby become unreasonable? I say no.

As for a "trial period", if the statute provided for one, I would agree with the majority decision. The statute does not so provide, and it is not the business of the courts or the MESC to create a "trial period" in order to reach a desired result.

I vote to affirm.