# STATE OF MICHIGAN

# COURT OF APPEALS

YVETTE D. COTTON,

        Claimant-Appellee,

v

EXPRESS EMPLOYMENT PROFESSIONALS,

        Respondent-Appellee,

and

DEPARTMENT OF TALENT AND ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellant.

UNPUBLISHED
December 18, 2018

No. 338946
Macomb Circuit Court
LC No. 2016-004047-AE

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

"Procedure should be the handmaid of justice," our Supreme Court has declared, "a means to an end," rather than "an end in itself . . . oblivious to the practical needs of those to whose ills it is designed to minister." *Allstate Ins Co v Hayes*, 442 Mich 56, 64; 499 NW2d 743 (1993) (cleaned up).[1] This unemployment compensation case exemplifies the triumph of rules over rights. Despite that the Unemployment Insurance Agency (UIA) is well aware that it improperly and incorrectly determined that Yvette Cotton owed restitution for benefits she received, it insists that Cotton's challenges came too late. We are constrained to agree, and reverse the circuit court's conclusion to the contrary.

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

I

In 2011, Yvette Cotton enrolled with Express Employment Professionals, a temporary staffing agency. Express Employment placed her with Burtek Enterprises, where she worked as a weld inspector until Burtek laid her off in December 2012. Cotton claimed unemployment benefits and received them for 22 weeks. We have not been provided with Cotton's application for unemployment benefits or documents reflecting the UIA's initial determination that she was entitled to receive them. The materials we have were generated later, and identify the "involved employer" as Express Employment rather than Burtek. This error likely contributed to a cascade of missteps on the parts of both Cotton and the UIA.

Although we do not have the proof in hand, the parties agree that the UIA approved Cotton's initial claim for benefits. Cotton received unemployment compensation checks from June through July 2013, and from March until June 7, 2014.

Cotton filed a new claim for unemployment benefits in June 2014; apparently this arose from different employment. Approximately one week later, on June 25, 2014, she found two letters from the UIA in her mailbox. The first informed her that she was "disqualified" from the 22 weeks of unemployment benefits that she had received following her Burtek lay-off. According to this letter, Cotton had voluntarily quit working at Burtek. The UIA sought $4,344.00 in restitution, which it planned to recoup by withholding further unemployment benefits. The second letter stated that Cotton had not "intentionally misl[ed] or conceal[ed] information to obtain benefits," and therefore was "not disqualified for benefits[.]" Both letters referenced the statutory sections underlying the determinations: MCL 421.29(1)(a) and MCL 421.62(b), respectively.[2]

Understandably, Cotton was confused by the seemingly contradictory letters. Unfortunately, she did nothing to allay her confusion until after the UIA began collecting the debt it claimed she owed. A tangled and even more confounding series of events unfolded, culminating in this appeal.

II

Before diving into the historical details, we take note of a few basic legal principles. First, the Michigan Employment Security Act of 1936 (MESA), MCL 421.1 *et seq.*, was intended "for the benefit of persons unemployed through no fault of their own . . . for the public good, and the general welfare of the people of this state." MCL 421.2(1). Courts should interpret MESA and its provisions liberally to give effect to this remedial legislation. *Laya v*

---

[2] MCL 421.29(1)(a) provides that a claimant who "[l]eft work voluntarily without good cause attributable to the employer" is disqualified from receiving benefits. In 2014, MCL 421.62(b) allowed the UIA to "cancel[]" the right to benefits of a claimant who "intentionally made a false statement or misrepresentation or . . . concealed material information to obtain benefits[.]" In that circumstance, interest and penalties may also be assessed. The statute was subsequently amended, but the amendment is inapplicable to this case.

*Cebar Constr Co*, 101 Mich App 26, 34; 300 NW2d 439 (1980). MESA includes a number of timing provisions; in the next paragraphs we discuss those pertinent to Cotton's case. The Legislature allocated to the Bureau of Worker's and Unemployment Compensation the responsibility to "promulgate rules and regulations that it determines necessary, and that are not inconsistent with this act, to carry out this act." MCL 421.4(1).

A decision that benefits are owed to an individual, or that an individual is disqualified from receiving benefits, is called a determination. MCL 421.27(a)(1). If a claimant disagrees with a determination, she can request a redetermination. MCL 421.32a(1). A redetermination request must be made within 30 days after the mailing of the determination notice. *Id*. The UIA may also seek a review of its own decision, and is bound by the same time limit. *Id*.

The UIA must review timely challenges to its determinations and must issue a reasoned redetermination affirming, modifying, or reversing the prior determination, or it may transfer the matter to an administrative law judge (ALJ) for a hearing. *Id*. For "good cause," the UIA may reconsider a determination or a redetermination after the 30-day period has expired. MCL 421.32a(2). However, the UIA may not reconsider a determination unless a request has been filed within one year of the date of mailing "of the original determination on the disputed issue." *Id*.

"Good cause" for reconsideration of a determination after the 30-day period has expired includes, but is not limited to, the following:

(a) If an interested party has newly discovered material facts which, through no fault of the party, were not available to the party at the time of the determination, redetermination, order, or decision. However, a request for reconsideration of a determination or redetermination or for reopening a decision or order made after the expiration of the statutory 30-day period solely for the purpose of evading or avoiding such statutory period is not for good cause.

(b) If the agency has additional or corrected information.

(c) If an administrative clerical error is discovered in connection with a determination, redetermination, order, or decision.

(d) If an interested party has a legitimate inability to act sooner.

(e) If an interested party fails to receive a reasonable and timely notice, order, or decision.

(f) If an interested party is prevented from acting sooner due to an untimely delivery of a protest, appeal, or agency document by a business or governmental agency entrusted with delivery of mail.

(g) If an interested party has been misled by incorrect information from the agency, the office of appeals, or the board of review. [Mich Admin Code, R 421.270.]

A party dissatisfied with the agency's redetermination has yet another avenue for redress: an appeal. Like the initial protest of a determination, a 30-day window applies to an appeal. MCL 421.33(1). ALJs decide such appeals. *Id*. A party aggrieved by an ALJ's decision may, within 30 days, file an appeal to the Michigan Compensation Appellate Commission (MCAC). MCL 421.33(2).

III

We return to the facts of Cotton's case.

In November 2014, Cotton filed a late protest of the June letter notifying her that she was disqualified from benefits. She explained that her challenge was late because she was "not fully aware that I was not supposed to get my benefits from Express Professionals." The letter continued, "I did not quit my job with Express Professionals. I was laid off due to lack of work at Burtek the company I was working for. I was sent the determination and they agreed to pay me the unemployment."

Burtek did, in fact, notify the UIA that Cotton had been laid off and did not quit voluntarily. In a letter dated March 16, 2014, Burtek's "Human Resource Generalist" advised the UIA that Cotton "was no longer working for the company due to a lay-off and found employment elsewhere. I am verifying this as fact so the overpayment can be removed from her account as it was incorrectly charged to her." The letter concludes, "Please consider this letter as employer protest for the previous determination."

The UIA claims that Burtek's letter did not arrive at the agency until 2016, two years after its date. Because we do not have Cotton's claim file, we have no proof of that, one way or another. We note that the date of the letter—March 16, 2014—is three months before the date of the June determination disqualifying Cotton from benefits. Other evidence of record (which we discuss below) indicates that the UIA had the letter before it issued its initial determination. Regardless of when it was received, the letter establishes that the UIA erred by disqualifying Cotton. The UIA is unwilling to own up to this error. Instead, it insists that because Cotton failed to timely challenge her disqualification, she has no recourse.

On December 9, 2014, the UIA advised Cotton that her challenge to the June 25 redetermination was denied for lack of good cause to extend the protest period. The letter concluded, "You are disqualified under" MESA, MCL 421.32a(2), the statutory subsection setting forth the 30-day time limit for reconsideration of a prior determination. Cotton timely appealed. ALJ Richard Finch held an evidentiary hearing at which Cotton testified. The Burtek letter was not referenced at the hearing. ALJ Finch expressed that he "sympathizes with Ms. Cotton's confusion," but in an opinion issued on April 23, 2015, ruled that she had not established good cause for her delay in pursuing a remedy. The opinion continues:

> The [UIA] issued two (2) determinations regarding two (2) different issues on the same day. It was Claimant's responsibility to file a protest to the one that found against her within thirty (30) days. During that time, she could have sought assistance from the [UIA] or from an[] advocate or attorney if she did not understand the issues involved.

-4-

Notably, ALJ Finch relied on an inapposite standard for "good cause." Despite that ALJ Finch understood the question presented as whether Cotton could "establish good cause for filing a late protest to the involved Determination," Finch applied the "good cause" standard applicable to the "late filing of a new, additional, or reopened claim," which is set forth in Mich Admin Code, R 421.210(2)(e). The events giving rise to "good cause" under that section are different from and more rigorous than those contained in Mich Admin Code, R 421.270, the applicable rule under these circumstances. Good cause under R 421.210(2)(e)

> means that there is a justifiable reason, determined in accordance with a standard of conduct expected of an individual acting as a reasonable person in the light of all the circumstances, that prevented a timely filing or reporting to file as required by this rule. Examples of justifiable reasons that the agency may consider as constituting good cause include any of the following:
>
> (i) Acts of God.
>
> (ii) Working or reliance on a promise of work that did not materialize.
>
> (iii) Closing of agency offices, or the failure of the agency's telephonic or electronic equipment, during scheduled hours of operation.
>
> (iv) Delay or interruption in the delivery of mail or the delay or interruption of information by telephonic or other means by a business or governmental agency entrusted with the delivery of mail or of messages by telephonic or other means.
>
> (v) Personal physical incapacity or the physical incapacity or death of a relative or ward of either the individual or the individual's spouse or of any person living in the same household as the individual claiming benefits.
>
> (vi) Attendance at a funeral.
>
> (vii) Incarceration.
>
> (viii) Jury duty. [Mich Admin Code, R 421.210.]

These criteria do not include a more generous (and more relevant) provision in R 421.270(1)(b): "If the agency has additional or corrected information."

After receiving the bad news from ALJ Finch, Cotton again delayed. ALJ Finch issued his decision on April 23, 2015. Cotton did not file a request for rehearing or an appeal to the MCAC, and ALJ Finch's decision became final on May 25, 2015.

Almost a year later (March 18, 2016), the UIA forwarded to ALJ Laura Gibson the Burtek letter asserting that Cotton had not voluntarily quit her employment. How or why that happened is unclear. According to ALJ Gibson's subsequent order:

> On March 18, 2016, the [UIA] forwarded a "rehearing" request from Employer to the undersigned. However, that document contains information

regarding Claimant's separation, and is dated March 16, 2014. *It appears that this documentation was sent to the [UIA] prior to the date the [UIA] had issued the Determination in this case.* [Emphasis added.]

The Burtek letter made no difference, however, as ALJ Gibson concluded, "Because there is no indication that the parties have attempted to request a rehearing, the matter is dismissed."

A few weeks later, *Cotton*, not Burtek, appealed ALJ Gibson's ruling to the MCAC, contending that she had "new" evidence: the letter provided by Burtek to "the Office of Employer Ombudsmen on March 30, 2016." The MCAC found that because Burtek sent its letter to the UIA more than 30 days after ALJ Finch's April 23, 2015 decision, it was actually a request for reopening the matter, rather than a request for rehearing. Applying yet another good cause provision of the Administrative Code—Mich Admin Code, R 792.11402(d)—the MCAC determined that Burtek had not established good cause to reopen the matter,[3] and affirmed ALJ Gibson's order with the correction that it was an order denying reopening.

Cotton, now represented by counsel, filed an appeal with the circuit court. She argued that under the plain language of MCL 421.32a(2), the UIA lacked subject matter jurisdiction to reverse her eligibility for 20 of her 22 benefit weeks. The circuit court agreed, ruling that each of Cotton's benefit checks constituted a separate determination. Based on the court's construction of the MESA, the court concluded that the UIA's June 25, 2014 redetermination included payments that had become final, and the UIA's decision that Cotton was disqualified to receive them came too late. In light of this ruling, the court declined to address the timeliness of Cotton's protests or requests for rehearing or reopening.

The UIA filed an application for leave to appeal, which this Court granted. *Cotton v Express Employment Professionals*, unpublished order of the Court of Appeals, issued December 21, 2017 (Docket No. 338946).

IV

The UIA contends that the circuit court erred by failing to affirm the MCAC's decision, as it was consistent with the law and the record. The procedural framework governing unemployment benefit appeals supports the UIA, despite that it works an injustice.

A circuit court may review a final agency decision, but must generally uphold the agency if the decision "is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 583; 701 NW2d 214 (2005). We review a circuit court's ruling in an administrative appeal "to determine whether the circuit court applied correct legal principles[.]" *Nason v State Employees' Retirement Sys*, 290 Mich

---

[3] Mich Admin Code, R 792.11402(d) is found within the "definitions" governing "proceedings before [ALJs] and the [MCAC] under the [MESA], . . . MCL 421.1 to 421.75." [Mich Admin Code, R 792.11401.]

App 416, 424; 801 NW2d 889 (2010). This case involves the construction of several statutes, which we perform independently and without affording any deference to the circuit court. *Mich Gun Owners, Inc v Ann Arbor Pub Sch*, 502 Mich 695, 702; 918 NW2d 756 (2018). When we review an agency's construction of a statute, our primary consideration is whether the interpretation coincides with the statute's plain language. *Nason*, 290 Mich App at 424.

Cotton appealed the MCAC's ruling. That ruling was limited to one finding: that Burtek did not establish good cause to reopen the case. The MCAC declined to review the underlying facts, as the rules controlling agency procedures eliminated the need for further inquiry. Therefore, the sole question before the circuit court was whether the UIA's decision "was supported by the law[.]" *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 578; 659 NW2d 629 (2002). We hold that it was.

As she did in the circuit court, Cotton centers her argument on whether the UIA lacked subject matter jurisdiction of her unemployment claim in June 2014, when it redetermined her eligibility for benefits. This issue was not before the MCAC, and is therefore unpreserved. To preserve an issue for review in the circuit court, a litigant must raise it during the agency proceedings. See *Town & Country Dodge v Dep't of Treasury*, 420 Mich 226, 228 n 1, 362 NW2d 618 (1984). Generally speaking, our review is confined to those issues considered by the MCAC. We may disregard preservation requirements to avoid manifest injustice, "or if the issue involves a question of law and the facts necessary for its resolution have been presented" to us. *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 640; 734 NW2d 217 (2007).

We find no merit in Cotton's subject matter jurisdiction argument, which involves a purely legal question. Although the UIA likely erred by redetermining Cotton's eligibility for benefits when it did (at least as to some of them), it had the power to make benefit redetermination. See *Workers' Compensation Agency Dir v MacDonald's Indus Prods, Inc (On Reconsideration)*, 305 Mich App 460, 478; 853 NW2d 467 (2014) ("There is a difference between a court's having no *jurisdiction* to take an action and having no *legal right* to take the action."). As this Court explained:

> A tribunal's subject-matter jurisdiction depends on the kind of the case before it, not on the particular facts of the case:
>
> > Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending. The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry. Jurisdiction always depends on the allegations and never upon the facts. [*Id*. at 477-478 (cleaned up).]

Agencies sometimes break the rules. Appellate courts sometimes fail to follow the law, at least as Supreme Courts subsequently interpret it. But these transgressions do not mean that the first-instance deciders lacked jurisdiction over the issues they considered.

When Cotton initially applied for unemployment benefits, the UIA had the power to determine whether the law permitted her to receive them. The UIA also had the power reconsider its own decision, to issue a redetermination of Cotton's benefits—and to make a mistake. See MCL 421.32a(2). The UIA may have erred by exercising its power beyond the time allotted by MCL 421.32a(2). But that error did not divest the UIA of its jurisdiction over Cotton's unemployment claim.

The MCAC found that Burtek's request to reopen Cotton's case came too late, as it was received years after ALJ Finch rendered his decision. The circuit court should have confined its evaluation to whether the MCAC's decision was supported by the law and the facts, the sole issue before it. This decision did not contravene the law and was factually well supported. This means that it should have been affirmed.

All of this said, we share the circuit court's frustration. The UIA has never challenged the accuracy of the Burtek letter, which establishes that Cotton was laid-off and did not voluntarily resign. This means that the UIA erred by demanding that Cotton pay restitution. To the extent the UIA has collected restitution, the Agency has been unjustly enriched. Our inability to pinpoint exactly when Burtek supplied the UIA with the letter prevents us from concluding that ALJ Finch erred by finding no good cause for Cotton's late protest. ALJ Gibson's opinion suggests that the Burtek information was available to ALJ Finch and the UIA. How and why it was overlooked is a mystery, at least to us. We acknowledge, however, that under the law, Cotton must bear responsibility for not just one but at least two tardy appeals, and that her delays justify—legally—a denial of relief.

We reverse and remand for entry of an order affirming the MCAC's decision. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering