*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LILLIAN A. SCOTT,

        Claimant-Appellant,

v

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee.

FOR PUBLICATION
March 10, 2022

No. 350690
Berrien Circuit Court
LC No. 18-000266-AE

Before: SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

REDFORD, J. (*concurring in part and dissenting in part*).

For the reasons set forth below, I respectfully concur in part and dissent in part.

I concur with the majority in LARA Cases[1] 915 and 916. Since LARA issued a
redetermination before issuing a determination in those matters, under *Dep't of Licensing and
Regulatory Affairs/Unemployment Ins Agency v Lucente*, ___ Mich ___; ___ NW2d ___ (2021)
(Docket Nos. 160843 and 160844), reversal of the $39,620 judgment against Claimant Lillian A.
Scott is appropriate.

I dissent from the majority in LARA Cases 913 and 775. I would affirm this portion of the
circuit court decision because the Agency complied with the requirements of Michigan law and
properly assessed the financial penalties at issue in those cases and correctly entered judgment in
the amount of $50,060.

---

[1] For ease of reference, the cases will be referred to by the last three numbers of the LARA case
numbers hereinafter, i.e., 913, 775, 915 and 916.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this matter, Scott had four separate case numbers from LARA that were the subject of her administrative hearing, the decision of which she appealed to the Michigan Compensation Appellate Commission (MCAC), then its decision to the circuit court, and its decision she now appeals.

| LARA Case Number | LARA Docket Number | Notice of Determination letter dated | Notice of Redetermination letter dated | Amount principal | Amount penalty | Total amount assessed |
|---|---|---|---|---|---|---|
| 0-002-333-913 | 18-008614 | 05/09/2014 | | | | |
| 0-001-824-775 | 18-008735 | 05/09/2014 | | $10,012 | $40,048 | $50,060 |
| 0-002-333-915 | 18-008763 | | 05/09/2014 | | | |
| 0-002-333-916 | 18-009016 | | 05/09/2014 | $7,924 | $31,696 | $39,620 |

Scott previously worked for Enterprise Synergy, LLC. After her employment ended with the company, she received unemployment benefits before May 2014. On February 10, 2014, Scott's previous employer sent a 4-page document to the Agency advising in detail that Scott voluntarily left her employment with the company in May 2013.

On April 24, 2014, LARA sent a letter addressed to Scott at her 856 Ogden address titled "Request for Information Relative to Possible Ineligibility or Disqualification." The letter advised:

> A question of eligibility and/or qualification has been raised on this claim. Please respond to the questions on the reverse side of this form. You should keep a copy for your records. The completed form must be received by UIA within 10 calendar days of the mail date shown. *Failure to respond to this request for information will result in issuance of a determination based on available information.* [Emphasis in original.]

The letter went on to explain possible sanctions including fines and costs. There is no indication of a response from her.

On April 24, 2014, LARA also generated a similarly titled document which contained other questions regarding information she provided and asked whether she had voluntarily left employment because of "quit/personal reasons." There is no indication of a response from her.

On April 24, 2014, LARA also generated a letter to Enterprise Synergy, LLC titled "Request for Information Relative to Possible Ineligibility or Disqualification." On April 25, 2014, Synergy responded to the Agency by filling out the form it received. After more than 10 days elapsed, on May 9, 2014, LARA issued a Notice of Determination in Cases 913 and 775 and Notices of Redetermination in Cases 915 and 916. On May 9, 2014, LARA also issued letters to

Scott to her home address listing the unemployment benefits overpayments made in relation to her claims and identifying the amount Scott owed plus penalties to be paid in restitution.

Scott testified during the ALJ hearing, "Well, this is been going on since 2014 when I contacted Legal Aid," and that she engaged legal counsel to assist her in her dispute with the Agency and worked with him through 2016 regarding approximately $80,000 to $100,000 that the Agency said she owed and because the Agency garnished Scott's wages and intercepted her federal income tax refunds. Scott testified that she had numerous phone conversations with Agency representatives during 2015 and 2016, and otherwise contested the actions it had taken.

Eventually, an administrative hearing was conducted on August 2, 2018, presided over by an administrative law judge. The ALJ's opinions in all four cases included among others the following findings of fact:

> The claimant's address at the time of filing was 856 Ogden Ave Benton Harbor, MI 49022-5135. She has maintained the same address through the time of hearing.

> On May 9, 2014, multiple Agency Determinations/Redeterminations were mailed to the claimant at 856 Ogden Ave Benton Harbor, MI 49022-5135 that held the claimant disqualified for benefits under Section 29(1)(a) of the Act ([18-008614], ineligible for benefits under Section 48 of the Act [18-008763], and that the claimant committed fraud [18-008735 and 18-009016]. Attached Restitution and fraud penalties totaled $89,680.00

The ALJ's opinion's Reasoning and Conclusions Of Law in relevant part stated:

> I did not find the claimants testimony credible. The claimant rarely answered the actual question posed to her regardless of who posed it. The claimant's testimony was all over the board as to what she received in the mail from the Agency, what she didn't receive from the Agency, and what she might have received in the mail from the Agency. . . .

> While I understand there is no proof of service on the May 9, 2014 Determinations, I did not find the claimant's testimony credible that she did not receive them. Further, I did not find the claimant's testimony credible that she was unaware of any issue with her 2012 and 2013 claims for benefits until the end of 2015. . . .

Scott appealed the ALJ's decision to the MCAC which affirmed the ALJ's decision, and then she appealed that decision to the circuit court. On June 11, 2019, the circuit court affirmed the decisions of the ALJ and MCAC. From the circuit court's decision, Scott has appealed by leave granted.[2]

---

[2] *Lillian A. Scott v Enterprise Synergy LLC*, order of the Court of Appeals entered February 11, 2020 (Docket No. 350690).

## II. STANDARDS OF REVIEW

We review de novo the circuit court's application of legal principles in reviewing an administrative decision, including matters of statutory interpretation. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009). We review the circuit "court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clear-error standard of review." *Braska v Challenge Mfg Co*, 307 Mich App 340, 351-352; 861 NW2d 289 (2014) (quotation marks and citation omitted). "A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005).

When an ALJ serves as the trier of fact in an administrative proceeding, it is the ALJ who "heard testimony . . . , reviewed all the evidence in the record and made findings of fact based on the credibility of witnesses and weight of the evidence." *Hodge v US Security Assoc, Inc*, 497 Mich 189, 195; 859 NW2d 683 (2015). The ALJ's role requires that it, and not a circuit court on review, make determinations of credibility and resolve evidentiary conflicts. *Id*. at 194-195. The circuit court "must affirm a decision of the ALJ and the MCAC . . . if competent, material, and substantial evidence supports it. A reviewing court is not at liberty to substitute its own judgment for a decision of the MCAC that is supported with substantial evidence." *Id*. at 194. "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *VanZandt*, 266 Mich App at 584 (quotation marks and citation omitted). Although the MCAC's factual findings are entitled to great deference, they are only conclusive if "any competent evidence" supports those findings. *Brackett v Focus Hope, Inc*, 482 Mich 269, 275; 753 NW2d 207 (2008). "Evidence is competent, material, and substantial if a reasoning mind would accept it as sufficient to support a conclusion." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 63; 678 NW2d 444 (2003). Under the clear error standard, this Court will affirm if the lower court's determination "is plausible in light of the record viewed in its entirety." *Beason v Beason*, 435 Mich 791, 803; 460 NW2d 207 (1990).

## III. ANALYSIS

The Legislature intended that the Michigan Employment Security Act (MESA), MCL 421.1 *et seq*., be "for the benefit of persons unemployed through no fault of their own . . . for the public good, and the general welfare of the people of this state." MCL 421.2(1). Courts should interpret MESA and its provisions liberally to give effect to this remedial legislation. *Laya v Cebar Constr Co*, 101 Mich App 26, 34; 300 NW2d 439 (1980). A decision that benefits are owed to an individual, or that an individual is disqualified from receiving benefits, is called a determination. MCL 421.27(a)(1). If a claimant disagrees with a determination, a person may request a redetermination. MCL 421.32a(1). A redetermination request must be made within 30 days after the mailing of the determination notice. *Id*.

In its decision, the ALJ considered the testimony adduced during the hearing and the admissible documentary evidence submitted for its review. The ALJ performed its function as the trier of fact and ultimately determined that Scott lacked credibility regarding her assertion that she

had not received the notices mailed to her home address on May 9, 2014, respecting LARA Cases 913 and 775, and her claim that she lacked awareness of any issue with her 2012 and 2013 claims for benefits until 2015 or perhaps 2016. The MCAC reviewed the ALJ's decision as well as all of the documentary evidence and testimony and concluded that the ALJ had correctly ruled. The circuit court found that a preponderance of the evidence supported the ALJ's and MCAC's decisions. This Court is not to substitute its judgment for that of the circuit court because it believed the evidence warranted a different result. *VanZandt*, 266 Mich App at 584.

The record indicates that Scott admitted in her testimony that she received numerous mailings by the Agency. The lack of returned mail in Scott's Agency file permits a reasonable inference that the May 9, 2014 determination letters and the restitution letters regarding her claims were received by Scott. Although Scott asserted that she never received the determinations and only learned of the fraud and misrepresentation issue until sometime in or after 2016, Scott's testimony that she engaged legal counsel in 2014 permits a reasonable inference that the determination notices and restitution letters were mailed to her and received by her informing her that she had been disqualified from receiving unemployment benefits and had to repay the overpayments. The fact that she engaged legal counsel already in 2014 calls into question her contention that she knew nothing until her wages were garnished and her income tax refunds were intercepted.

The fact that Scott consistently testified that she did not receive the notices does not vitiate the deference that this Court must give to administrative findings based on credibility determinations. *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). I disagree with the majority's conclusion that there is no affirmative evidence in the record to support a finding of fact that the Agency sent the notices. Notably, the record lacks evidence of any disruption of the mail service to Scott. She testified she received numerous documents from the Agency over the years. In fact, the only delivery issue Scott raises is in reference to the documents sent on May 9, 2014. Laura Glynn, the Agency's representative at the hearing, testified that all written communications were sent to Scott's mailing address and that no notices were returned as undeliverable. She explained that, if the mailings had been returned, they would have been in Scott's claim files. Although she acknowledged that no proofs of service were in the claims files, the record does not reflect that the Agency had a policy, rule, or regulation that required it to file proofs of service. Further, no statutory requirement appears to exist requiring the filing of proof of service documentation for mailings to claimants.[3] The record reflects that

---

[3] The majority's opinion intimates that the Agency must establish procedures that will enable it to establish unequivocally that a determination has been mailed and received by a claimant, such as file proofs of service or by having a person appear and testify to personal knowledge in every instance that such determination was deposited in the mail. In essence, the majority imposes a heightened burden on the Agency and establishes an evidentiary standard that restrains ALJs and the MCAC from considering and being able to rely upon record evidence such as in this case from which a reasonable inference may be drawn that the Agency actually mailed the claimant determinations. Had the Legislature deemed what the majority describes a necessary requirement, surely it would have directed that the Agency do so in the MESC in relation to the statutory notice mandate.

the Agency mailed numerous documents to Scott related to her claims and had copies in Scott's claims files of the documents sent on May 9, 2014, in the ordinary course of the Agency's business.

I conclude from the record that the circuit court did not misapply the substantial evidence test to the ALJ's factual findings that Scott received the 2014 determinations. Accordingly, I would affirm the circuit court's affirmance of the ALJ's and MCAC's decisions respecting LARA Cases 913 and 775.

/s/ James Robert Redford